DOWD, J.

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| United States of America, ) | |
| ) | CASE NO. 4:10 CR 415 |
| Plaintiff, ) | |
| ) | |
| v. ) | MEMORANDUM OPINION |
| ) | |
| Trent Shepard, ) | |
| ) | |
| Defendant. ) | |
| ) | |

I.  Introduction

The defendant was charged in a superseding indictment which alleged three counts of receipt of child porn and one count of an attempt to receive child porn.  The defendant entered a plea of not guilty and the Court began the impanelment of the jury on Monday, August 1, 2011.  On Monday, August 8, 2011, the jury returned guilty verdicts as to all four counts.  The defendant is awaiting sentencing.  The purpose of this Memorandum Opinion is to explain the Court's denial of the defendant's motion for mistrial on the morning of August 2, 2011.

II.  An Explanation of the Voir Dire Process
Leading to the Impanelment of the Jury

The Court follows its custom of preparing a questionnaire for distribution to the prospective jurors after they have arrived in the courtroom as the initial phase of the jury impanelment process.  The questionnaire is prepared by the Court and introduces the prospective jurors to the nature of the proceeding.  A copy of the jury questionnaire used in this case is attached as Appendix I..  The fourth question in Schedule A alerted the jurors to the fact that charges in the case related to "visual depictions of minors engaged in sexually explicit conduct."

(4:10 CR 415)

(*See* Question number 4.)

Eventually, the Court was presented with the fact of the telephone call by juror Darrin David following his impanelment as a juror on August 1, 2011.

The text of his telephone call received at 3:05 p.m. on Monday, August 1, 2011 follows:

> "Hi Debbie, I'm a juror that was in the courtroom today for Judge Dowd's case.  And I just left there, and I don't know how I'm going to be able to do this tomorrow.  I'll be honest with you.  I'm, like, half sick.  I guess they're showing pictures or a video tomorrow.
>
> "There is just no way I'm going to be able to view these pictures or video.  So I really don't know what to do.  I just called in and they put me to your number.  You know, there is just no way I can view any of these pictures or video on this case tomorrow.
>
> "I don't know what to do, to be honest with you, or who I need to talk to.  My cell phone number is 330-705-7988.  I just don't know who to talk to.  You know, I don't want to ruin anything.  But there is no way I can view any of these pictures or video.  I have kids and can't do this.  So if you or someone can give me a call, give me some direction, I'd really appreciate it.
>
> "Thank you, so much.  Bye-Bye."

Previously on August 1, 2011, the juror David was questioned at sidebar by the Court. The text of the Court's questioning of the juror David is reflected in pages 147 through 151 of the transcript of the voir dire.  (*See* Appendix II.)

### III.  The Proceedings Conducted with Respect to Juror David on the Morning of August 2, 2011 and Prior to the Introduction of Testimony

Initially, the Court notes that opening statements were presented to the jury after its impanelment on Monday, August 1, 2011.

As a consequence of the telephone call from juror David following the conclusion of the

(4:10 CR 415)

trial on Monday, August 1, 2011, the Court conducted a hearing outside the presence of the jury with respect to Mr. David's phone call.  A copy of the transcript of that proceeding is attached hereto at Appendix III.  Counsel for the government and the defendant were given the opportunity to question juror David as a result of his earlier telephone call.  The questioning of juror David follows.

> THE COURT: Mr. David, you are reminded you're still under oath.
>
> Counsel have asked for the opportunity to question you.
>
> Mr. Betras, you can go first, if would you like.
>
> MR. BETRAS: Thank you, Your Honor.  Mr. --
>
> THE COURT: David, I think it is.
>
> MR. BETRAS: Mr. David?
>
> A JUROR: Correct.
>
> MR. BETRAS: We have been informed that you're having some difficulty sitting as a juror in this case; is that fair for me to say?
>
> A JUROR: That's fair.
>
> THE COURT: Mr. David, what we have done is we transcribed the telephone call, and the counsel have the transcript of your telephone call to Debbie yesterday.  So they have the complete text of what you said.
>
> A JUROR: Okay.
>
> MR. BETRAS: So the question becomes, even though the images are -- they're hard to look at like I said in opening, but can you be fair and impartial?  Or do you think you could no longer fulfill your job as being a fair and impartial juror in this case?

3

(4:10 CR 415)

    A JUROR:    I won't be able to view the pictures or the video.

    THE COURT:    Excuse me?

    A JUROR:    I will not be able to view the pictures or video.

    THE COURT:    What do you mean you will not be able to? Are you going to close your eyes?

    You're saying yes, you're going to close your eyes?

    A JUROR:    Yes.  I don't -- I'm sorry.  Am I able to speak?

    THE COURT:    Sure.

    A JUROR:    I don't, I mean I understand the context of it. I don't think the pictures and the video, it is what it is.  I know what that is.  And I don't think that's going to -- I guess it comes down to, Your Honor, when right before we left yesterday, you made the comment that do not look anything up on the Internet after we leave because that stuff will stay in your brain, you can't get it out.  Your brain has a way of keeping it.

    And I was driving home and I though the exact same thing with these pictures and video, and that's the last thing I want in my head with two little kids at home.

    MR. BETRAS:    Well, if you're required as a juror to look at everything that is shown to you as an exhibit and you can't do it, do you feel you could be a juror in this case?

    A JUROR:    No, I do not.

    MR. BETRAS:    No further questions, Your Honor.

    A JUROR:    Sorry.

    MR. SULLIVAN:    Good morning, Mr. David.

(4:10 CR 415)

A JUROR: Good morning.

MR. SULLIVAN: Okay, you understand the importance of having a juror that's fair and impartial to the defendant and also to the government?

A JUROR: Absolutely. That's why I brought this --

MR. SULLIVAN: Right. And do you understand that if we had a jury of only people who had no discomfort in viewing images of child pornography that probably won't be a jury that would be fair and impartial to the government? Do you understand that?

A JUROR: I truly understand that.

MR. SULLIVAN: And these images are disturbing. They would be disturbing to any decent person; is that right?

A JUROR: Correct.

MR. SULLIVAN: And if you were in a homicide case you might have to see some very graphic photographs of a dead body or an autopsy, and that might make you uncomfortable as well; is that fair?

A JUROR: Fair.

MR. SULLIVAN: So as a sworn juror, if you are -- I mean, you have an obligation to weigh all the evidence as uncomfortable or as distasteful as that might be, can you understand that?

A JUROR: That's correct.

MR. SULLIVAN: And realizing that as a percentage of the time of the trial, the time that the jurors are going to be looking at any images or videos is going to be just a small fraction of the totality of the evidence in this case.

Can you tell us whether or not you can fulfill your obligation as uncomfortable as it may be? I'm not saying you have to stay and have it burned in your memory, but just to view the evidence for

(4:10 CR 415)

>what it's worth and then to carry on your obligation so that you can -- so that the government and the defendant can both have a fair and impartial juror?
>
>A JUROR: I wish I could as a citizen, I really do, because I think that is the fair thing to do. It's just -- I don't want it in my head.
>
>My two little kids, I got home last night and I just gave them a hug. and that's the last thing I want to think about it. To me it's the lowest part of humanity, and that's, you know, whoever did it, that's, you know a good question. It's just -- I don't want those images in my head. Trying to get those out of my head for the next ten years, you know. I've never seen anything like that and I don't ever intend to. It's just disturbing.
>
>And I thought about it a lot. You know, and that's why I think we had the small side-bars as we come up and I answered that one question, on my questionnaire about prejudice to that sort of case. And I think it would be difficult.
>
>THE COURT: Mr. David, what time did you arrive this morning?
>
>A JUROR: Approximately 8:30.
>
>THE COURT: Have you talked to any of the other jurors about your concern?
>
>A JUROR: No, I have not. I just, you know --
>
>THE COURT: Well, did you or didn't you?
>
>A JUROR: No, I did not.
>
>THE COURT: <u>Do any of the jurors know you called in yesterday after you were sworn with this commentary about you can't do the work?</u> (Emphasis added.)
>
>A JUROR: <u>I believe I may have talked to somebody on the way in just saying that it's going to be a hard day.</u> (Emphasis added.)

(4:10 CR 415)

        THE COURT:      <u>Who did you talk to on the way in?</u>
        (Emphasis added.)

        A JUROR:       <u>I do not know her name, Your Honor.</u>
        (Emphasis added.)

        THE COURT:      <u>What did you tell her.</u>  (Emphasis added.)

        A JUROR:       <u>I just told her that, you know, she said that it was going to be probably a rough day, and I said yes.  I called in because I thought it would be a rough day.  I don't know if I'll be able to view those pictures.</u>  (Emphasis added.)

    IV.  The Oral Motion For a Mistrial Made by Counsel for the Defendant
        Following the Questioning of Juror David on August 2, 2011

Following the questioning of juror David, the Court inquired of counsel as to what counsel believed the Court should do.  The responses follow.

        THE COURT:      Well, I'll hear you out again as to what you think I ought to do.

        MR. BETRAS:     May I have a moment to confer with my client, Your Honor.

        THE COURT:      Sure.

        (Pause)

        THE COURT:      Mr. Betras.

        MR. BETRAS:     After discussing it with my client, Your Honor, we are going to ask for a mistrial and ask that <u>we -- just conventual wisdom and the prudent thing to do is to ask for a mistrial.</u>  I'm not so sure that these jurors aren't -- you know, he talked to one juror about the pictures, and it's going to be rough, and blah, blah blah blah, and so I don't -- <u>I would just ask for a mistrial, that we reconvene with more jurors, maybe work better on that questionnaire</u> so we don't have this happen because we almost ran out of jurors -- we did run out of jurors in a sense to

7

(4:10 CR 415)

>begin with because of the nature of this case.  (Emphasis added.)
>
>THE COURT:       Thank you.
>
>Do you want to be heard?
>
>MR. SULLIVAN:    Judge, I don't think the juror said anything would warrant a mistrial.  There has been no evidence offered in the case anyways.  So there is really nothing that could have prejudiced the other juror other than the same predisposition that they came into Court with yesterday before we were voir dired.
>
>So I don't think anything has warranted a mistrial.

After listening to counsel, the Court denied the motion of the defendant for a mistrial and indicated that it would not excuse juror David or any other juror.

V.  The Explanation of the Court's Denial
of the Defendant's Motion for a Mistrial

The Court requested a larger jury panel than usual because of the nature of the criminal charges.  Consequently, there were 38 prospective jurors when the voir dire process began.  A number of jurors were excused for cause.  The defendant used all ten peremptory challenges and the government used five of its six peremptory challenges.

Only two prospective jurors remained after the peremptory challenges to the original 12 members of the jury had been exercised.  The defendant used his peremptory challenge with respect to one of the two remaining prospective jurors.  Consequently, only one juror remained to be seated as an alternate juror when the voir dire process was completed on Monday, August 1, 2011.

After the questioning of juror David, counsel for the defendant did not move the Court to remove juror David. Rather, counsel for the defendant limited his motion following the

8

(4:10 CR 415)

questioning of juror David on the morning of August 2, 2011, to a request for a mistrial and suggested that it was "the prudent thing to do is to ask for a mistrial."

In denying the defendant's motion for a mistrial, the Court concluded that the opening statement of the defendant had probably prompted juror David's response as indicated in his telephone conversation on August 1, 2011.

Specifically, counsel for the defendant in the opening statement declared:

> MR. BETRAS:      … Let me say this from the outset, that child pornography is disgusting.  And you're going to find it to be disgusting.  These pictures are horrendous that you're going to have to look at.  You're going to hear some testimony that child pornographers and those who actively and knowingly frequent them are sought out heavily by the FBI and they're scourged.  And even a lawyer, you got to talk about the 800 pound elephant in the room.  It makes me sort of sick to my stomach.  It's sort of natural.
>
> And so that's why this case is so difficult, and why it makes this case difficult because it makes you angry.  And when you get angry you want to blame someone.  It's sort of human nature.  And the government has given you the easy way out.  They're going to try to point the finger at my client and say blame him.  They're going to try to show you with some very disgusting pictures that I wish you didn't have to see, but you're going to have to, and videos that will make you sick to your stomach.  It will be a natural reaction and they're hoping that they're so disgusting that you'll want to blame someone and convict my client, because after all, it would be easy for you to blame my client.  He's the one sitting here.  And the government's going to have evidence pointing to him.

The defendant's opening statement clearly indicated that there was no factual issue with respect to whether the images represented child pornography.  Consequently, that issue disappeared.  Rather, the issue that remained was whether the defendant had knowingly engaged in viewing the images onto three computers at issue.

9

(4:10 CR 415)

The constitutional standard of fairness under the Sixth Amendment requires that a defendant in a criminal case have a panel of impartial, indifferent jurors. *Irvin v. Dowd*, 366 U.S. 717, 722 (1961).  Determining whether the trial court has seated a fair and impartial jury is a question of fact, involving an assessment of credibility.  *Gall v. Parker*, 231 F.3d 265, 208 (6th Cir, 2000)(citing *Patton v. Yount*, 467 U.S. 1025, 1038 (1984).

In *Parker v. Renico*, the Court held that a mistrial was improper when the jury unequivocally indicated that they could determine the case fairly on the basis of evidence, and were not influenced when informed of someone contacting a fellow juror in an attempt to pressure them to decide the cased in favor of the Defendant.  450 F.Supp.2d 727, 735-36 (E.D.Mich. 2006).[1]  Similarly, in *United States v. Wilson*, the Defendant moved for a mistrial stating that four members of the jury pool were crying during voir dire in response to another juror's story of her child that was a victim of forced prostitution, and thus the jury was not impartial in determining if he was guilty of producing child pornography. 565 F.3d 1059, 1069 (8th Cir. 2009).  The District Court held that a mistrial was improper after questioning each juror and obtaining assurances that they could remain impartial and weigh the evidence both for and against the Defendant.  *Id*. at 1069.  The Eighth Circuit upheld this decision and stated that it was not an abuse of discretion to accept jury assurances that their ability to give a fair trial was not affected.  *Id*. at 1069.

"A juror should be excused if 'the juror's views would prevent or substantially impair the

---

[1] The juror who was approached was excused, but the motion for a mistrial was denied despite the juror informing the rest of the jury of what had happened.

(4:10 CR 415)

performance of his duties as a juror in accordance with his instructions and his oath.'"
*Wainwright v. Witt*, 469 U.S. 412, 412 (1985)(citing *Adams v. Texas*, 448 U.S. 38, 45 (1980).
The views that juror David expressed in his phone call and during questioning regarding his call were his inability to actually witness the child pornography.  There was no dispute of fact as to whether the material was child pornography, and the issue that was before the jury was whether or not Mr. Shepard in fact knowingly viewed the material.  Thus, when considering juror David's responses during voir dire, the phone call, and his questioning regarding his phone call, he never stated that he would not be able to impartially determine whether or not the defendant viewed this material, only that the images and videos caused him severe discomfort.

As indicated, juror David's response was likely elicited by the defense counsel's opening remarks saying how disgusting and horrendous the material was.  However, since the concerns expressed by the juror were over viewing material which was in support of facts that were not in dispute, the Court found that juror David could fulfill his commitment as a juror.  Thus, when considering that dismissing juror David would result in having no alternate jurors on the panel, plus the possibility that one or more jurors might also ask to be excused based on the nature of

(4:10 CR 415)

the evidence if juror David was excused, the Court exercised its discretion and decided not to *sua sponte* excuse juror David, and concluded that the defendant's oral motion for a mistrial should be and was denied.

  IT IS SO ORDERED.


|  August 11, 2011 |  */s/ David D. Dowd, Jr.* |
|---|---|
| Date | David D. Dowd, Jr. |
| | U.S. District Judge |